**UNITED STATES of America,**

v.

**Fred Davis CLARK, Jr., a/k/a/ "Dave Clark," Defendant.**

**CASE NO. 13–10034–CR–MARTINEZ(s)(s)**

United States District Court, S.D. Florida.

Signed 01/27/2016

Post-Sentence Order for Forfeiture Feb. 25, 2016

---

Jerrob Duffy, Alison Whitney Lehr, Thomas Austin Watts-Fitzgerald, United States Attorney's Office, Miami, FL, Michael D. Padula, US Department of Justice, Washington, DC, for Plaintiff.

Marcia J. Silvers, Marcia J. Silvers, P.A., Coral Gables, FL, Todd Foster, Ashley Nicole Rector, Warren Abbey Zimmerman, Todd Foster Law Group, Claudia Teresa Pastorius, Claudia T. Pastorius, PA, Tampa, FL, Valentin Rodriguez, Jr., Law Offices of Valentin Rodriguez P.A., West Palm Beach, FL, David Stuart Weinstein, Clarke Silverglate, P.A., Miami, FL, for Defendant.

### ORDER OF FORFEITURE AND MONEY JUDGMENT

JOSE E. MARTINEZ, UNITED STATES DISTRICT JUDGE

This matter is before the Court upon the motion of the United States of America for entry of an order of forfeiture and money judgment. Being fully advised in the premises, this Court finds as follows:

1. On December 11, 2015, Defendant Fred Davis Clark, Jr., ("Clark" or "defendant"), was convicted of seven counts of the Second Superseding Indictment ("Indictment"), specifically: three counts of 18 U.S.C. § 1344(2) [Counts 2–4], three counts of 18 U.S.C. § 1014 [Counts 5–7]; and, one count of 18 U.S.C. § 1512(c)(2) [Count 12]. (D.E.468.) Counts 2 through 4 charged defendant with participation in a scheme to defraud and each count pertained to acts executed in furtherance of the scheme.

2. The Indictment placed defendant on notice that, upon defendant's conviction of the bank fraud and false statement offenses, the United States would pursue forfeiture of "any property constituting or derived from proceeds the defendant obtained directly or indirectly as the result of such offense or a conspiracy to commit such offense" and, that upon conviction of the obstruction offense for which 18 U.S.C. § 1512(c)(2) formed the underlying violation, the United States would seek forfeiture of "any property, real or personal, which "constitutes or is derived from proceeds" traceable to such offense or a conspiracy to commit such offense (D.E. 351, at 15–16).

3. Four specific properties were identified in the forfeiture allegations of the Indictment:

b. A sum of approximately $1,699,675 transferred on or about April 22, 2013 to a bank account in the name of Dinero Shop, SA at Banco Davivienda ending in x4611, in Roatan, Honduras which sum has been transferred to and frozen by the Honduras Office of Public Ministry;

c. A sum of approximately $452,519.52 contained in a bank account in the name of Dinero Shop, SA at Banco Davivienda ending in x4611 in Roatan, Honduras, which sum has been transferred to and frozen by the Honduras Office of Public Ministry;

d. A sum of approximately $125,000 wired by Travers, Thorpe, Alberga, Cayman Island Attorneys at the direction of Fred Davis Clark, Jr. to a Scotia Bank account ending in x8056; and

e. The funds, shares and business interest described by Defendant Fred Davis Clark, Jr., during his deposition in Case No. 13–CIV–10011–King, taken on December 6, 2013 at Parrot Tree Plantation, Roatan Bay Islands, Honduras more fully-described at pages 15, 17, 18 and 21 of the record of said deposition, generally described as $400,000 to $500,000 in funds issued by CMZ (CMZ Group LTD, a Cayman Islands company described in paragraph 9 of the Second Superseding Indictment in this matter, to include affiliates Cash Wiz Holdings, LTD and Island Elements, CI, LTD) to the benefit of Fred Davis Clark, Jr. and subsequently transferred to or for the benefit of Fred Davis Clark, Jr. to obtain an ownership interest in a tourist medical venture at Parrot Tree Plantation in Roatan, Honduras.

(D.E. 351, at 16.) In addition, the United States sought, "a sum of money equal in value to the proceeds traceable to the offense(s)." (*Id.*)

4. Before the jury was excused, defendant waived forfeiture presentation to the jury. (D.E.466.)

### Forfeiture Is Mandatory For Each Count of Conviction

■ 5. Defendant is subject to mandatory forfeiture for his convictions of bank fraud, making false statements and obstruction pursuant to 18 U.S.C. § 982(a)(2) and 28 U.S.C. § 2461. Both statutes use the word "shall." *See United States v. Monsanto,* 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989). The applicable statute with respect to defendant's bank fraud and false statement convictions, 18 U.S.C. § 982(a)(2), provides, "[t]he court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate—(A) section . . . 1014, . . . or 1344 of this title, affecting a financial institution . . . *shall* order that the person forfeit to the United States any property constituting or derived from, proceeds the person obtained directly or indirectly as the result of such violation." *Id.* (emphasis added).

6. Forfeiture is also mandatory pursuant to 28 U.S.C. § 2461(c). *See United States v. Brummer,* 598 F.3d 1248 (11th Cir.2010) (finding that district court was required to direct forfeiture under 28 U.S.C. § 2461(c)). By application of § 2461(c), forfeiture of property is mandated for a violation of 18 U.S.C. § 1512, since it is a racketeering activity identified in 18 U.S.C. § 1961(1), which is a specified unlawful activity under 18 U.S.C. § 1956(c)(7)(A). Forfeiture is imposed through 18 U.S.C. § 981(a)(1)(C) which provides for forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

### For Counts 2 Through 4, A Forfeiture Money Judgment Shall Issue In The Amount of Proceeds Obtained Through the Fraudulent Scheme

■ 7. For Counts 2 through 4, the Court finds that defendant must forfeit an amount equal in value to the amount of proceeds obtained fraudulently through the scheme. When a scheme is charged, even though only certain substantive counts are proved, the proceeds of the scheme are forfeitable. *See United States v. Hasson,* 333 F.3d 1264, 1279–1280 (11th Cir.2003) (for forfeiture purposes, factfinder could use evidence of "extensive scheme to defraud furthered by various mailings [acquitted conduct] and uses of the wires [convicted conduct]." *Id.* at 1280. As discussed in *United States v. Capoccia,* 503 F.3d 103, 110 (2nd Cir.2007), so long as the crime with which a defendant is charged constitutes a scheme, such as bank fraud, the government can forfeit proceeds of the scheme. Using the Eleventh Circuit's rationale in *Hasson,* 333 F.3d at 1279–1280, and as further discussed in *Capoccia,* 503 F.3d at 117, defendant is liable for forfeiture of the proceeds of his entire scheme.

8. For Counts 2 through 4, defendant was convicted of scheme to defraud, which as defined in the Indictment encompasses a range of conduct between November 2004 and at least May 2011. Based on evidence introduced at trial including testimony and voluminous exhibits, the Court finds that Cay Clubs operated as a real estate flipping scheme that from the outset utilized "same day flips" of condo units to inflate prices; insider sales whereby defendant sold to himself, his girlfriend and his senior employees and obtained bank loans at the same time; and, distributed false marketing materials to induce lending institutions and individual investors to purchase units, while at the same time to

part with hundreds of millions of dollars and provide these monies to defendant and entities he controlled. Cay Clubs mushroomed into a massive fraud that continued for several years, and defendant served as the principal decision-maker, majority owner and Chief Executive Officer the entire time.

9. Through evidence adduced at trial, including the testimony of forensic accountant Maria Yip, and as supplemented by the "Expert Report of Maria M. Yip dated October 17, 2013," ("Yip Report"), Cay Clubs "derived $303.8 million from approximately 1,400 investors nationwide through the sales of units and membership dues." The evidence at trial showed that defendant and others committed bank fraud from the very inception of Cay Clubs, including by using straw borrowers and providing the cash to close for the first seven transactions at Cay Clubs. Defendant and his subordinates then fraudulently used those transactions in marketing materials, and other fraudulent marketing materials that included false and misleading information, to obtain additional sales. The evidence further showed that the marketing materials contained false and fraudulent representations as to how the investors' funds would be used, falsely claimed "appreciation" for prior sales that in fact never occurred, and loan documents submitted to lenders contained false and fraudulent information. Then, the defendant used the proceeds of the bank loans for purposes other than what the investors were promised. He used the bulk of the money to acquire yet other properties and businesses and to personally profit, *not* to develop the properties as promised.

10. Evidence at trial showed that defendant obtained millions of dollars from Cay Clubs for his own personal benefit. According to documents and testimony introduced at trial, defendant personally derived $22,131,516.97 in proceeds between late 2004 and December 31, 2006, as well as a portfolio of properties that defendant himself valued at $23 million. According to documents and testimony introduced at trial, the defendant's portfolio of properties were obtained via $19,606,984 in bank loans. (*Id.*) All of these loans were obtained in the names of others, but the properties were owned and controlled by defendant and the mortgage payments were paid by defendant with funds derived from the main Cay Clubs operating account.

11. Defendant orchestrated a scheme that fraudulently obtained approximately $303.8 million in proceeds from Cay Clubs investors (primarily in the form of bank loans), and this amount forms the basis of the forfeiture as to Counts 2 through 4. In sum, in the instant trial, as in *Hasson,* the government presented extensive evidence of defendant's scheme to defraud, which scheme was assisted by certain specific acts including those for which defendant was convicted at Counts 2 through 4.

### For Counts 5 Through 7, A Forfeiture Money Judgment Shall Issue In the Amount of The Fraudulently Obtained Loans

12. "For purposes of criminal forfeiture, the 'proceeds' of a fraudulently obtained loan equal the amount of the loan." *United States v. Newman,* 659 F.3d 1235, 1244 (9th Cir.2011), citing *United States v. Boulware,* 384 F.3d 794, 813 (9th Cir.2004). The amount of the loan is not offset by any loan proceeds that have been repaid. *See Boulware,* at 813; *United States v. Annabi,* 746 F.3d 83, 85 (2nd Cir.2014); *United States v. Joel,* 2012 WL 2499424 at *3 (M.D.Fla. June 5, 2012)(no reduction for costs and expenses).

13. With respect to Count 5, the United States demonstrated at trial, that Cristal Clear Management ("CCM"), not the borrower, wired $162,070 as "Cash to

Close" which resulted in J.P. Morgan Chase loaning $646,757 on Unit 426 at the Sombrero property in Marathon, Florida. The full amount of the loan was $646,757.

14. With respect to Count 6, the United States demonstrated at trial, that CCM, not the borrowers, wired $235,258 as "Cash to Close" which resulted in J.P. Morgan Chase loaning $565,912 on Unit 432 at the Sombrero property in Marathon, Florida. The full amount of the loan was $565,912.

15. With respect to Count 7, the United States demonstrated at trial, that CCM, not the borrowers, wired $235,250 as "Cash to Close" which resulted in J.P. Morgan Chase loaning $565,912 on Unit 433 at the Sombrero property in Marathon, Florida. The full amount of the loan was $565,912.

***For Count 12, Defendant Must Forfeit The Amount Equal To The Value Of The Proceeds He Would Not Have Obtained "But For" His Obstruction***

16. Evidence at trial including testimony and exhibits established that during the course of the SEC's investigation, defendant in fact owned and controlled substantial sums of money and property. The SEC attempted to identify defendant's assets and accounts that he owned or controlled, directly or indirectly, during its investigation. During his May 13, 2011 sworn testimony with the SEC, for example, defendant was asked numerous questions about his ownership and control over assets and accounts in the United States as well as in foreign jurisdictions, and was specifically asked about whether he exercised any control over accounts in the Cayman Islands. Defendant also was asked about his sources of income as of 2011, including his salary and ownership interest in the CMZ business. Defendant provided false sworn testimony to the SEC in connection with his income and assets.

17. As established through the evidence and testimony introduced during the trial, and as supplemented in the government's Motion, in 2013, after defendant was sued by the SEC for securities fraud in the Southern District of Florida, defendant directed that his proceeds of the sale of his interest in CMZ and the rum business be transferred to accounts held by other persons and entities, and to other individuals. Defendant engaged in these actions to conceal the existence and location of these funds, and his ownership and control over them, because he knew that the SEC was actively seeking to identify the source and location of any assets or funds that he controlled directly or indirectly. The forfeiture money judgment amount for defendant's obstruction conviction should therefore be at least $3.3 million because the evidence introduced in the record of this case establishes that this amount of funds was transferred with the aim of hiding and concealing it from the SEC.

***The Government Has Established the Requisite Nexus Between the The Properties Specifically Identified For Forfeiture And Defendant's Bank Fraud And Obstruction Crimes***

18. The Court finds that in addition to determining the amount of and entering the requested money judgments, that each of the specific properties sought for forfeiture, the $1,699,675.00, the $452,519.52, the $125,000, and the medical venture funds (D.E.351, p. 16) are subject to forfeiture since each of the properties constitutes proceeds of defendant's criminal violations for Counts 2 through 4 and 12 of the Indictment. "But for" his bank fraud scheme, which generated millions of dollars, the Court finds that defendant would not have been able to acquire certain assets like the rum business and his CMZ partnership discussed below. Defen-

dant then sold those assets to CMZ for approximately $5 million dollars, of which defendant received approximately $3 million dollars between January and March 2013. Defendant then used those $3 million in proceeds to make the payments into the X–4611 account ($1,699,675.00, $452,519.52, and the approximate $400,000 to $500,000 for the medical venture), to make the $125K payment into his Scotia bank account and to acquire the medical venture. The Court further finds that "but for" defendant's obstruction of the SEC, defendant would not have obtained, maintained or retained his access to or control over the properties identified for forfeiture. As the specific properties constitute proceeds within the meaning of 18 U.S.C. §§ 982(a)(2) and 981(a)(1)(C), they are forfeitable and the Court shall enter the requested order of forfeiture.

### The Rum Business And Clark's Partnership Interest In CMZ Were Derived From Proceeds of Clark's Fraud Scheme

19. The Court finds that from evidence introduced at trial and as supplemented in the Motion, the defendant received millions of dollars from the operation of the Cay Clubs fraud scheme and that these funds were controlled and used by defendant for his personal benefit. Evidence at trial, including the testimony of Debbie Smith and defendant himself, as well as various exhibits, established that monies from various Cay Clubs accounts were used to acquire CC Distribution, which defendant controlled. These entities in turn 'owned' "Pirate's Choice Rum," and its associated trademark. Pirate's Choice Rum was part of a rum and liquor distillery and distribution business that was funded through Cay Clubs accounts. Subsequently, significant funds from the rum business and from sales of interests in it, were obtained by defendant personally.

20. The Court finds that the rum was used in Cay Clubs marketing, was co-branded with Cay Clubs at Cay Clubs marketing events and venues, and was sold and given away as part of the operations of Cay Clubs. Significant sums from Cay Clubs, specifically from the CCM account, DC6, and the "Coleman, Priday, Schwarz" Bank of America accounts all were used to fund the Pirate's Choice rum business, including the distillery, the purchase of supplies and liquor bottles, and for marketing and overhead for the business.

21. The Court finds that in October 2010, when defendant was involved in the pawn shops business in the Caribbean, defendant stated to a business partner, Joe Zahn, that after shutting down Cay Clubs and paying $80 million back to investors and lenders, defendant stated that he had taken $2 million dollars from Cay Clubs and come "down to the Caribbean to start his life over again." (Zahn Tr. of 7/20/2015, at 142). Thereafter, defendant implied, he utilized those funds to open and operate CMZ. The Court credits this testimony and finds that defendant's statement, combined with the evidence introduced at trial and referred to above, shows that defendant's Cay Clubs fraud scheme was the source of funds for defendant's financial stake in the CMZ pawn shop business, as part of his effort to "start his life over again."

### The Rum Business And Clark's CMZ Shares Were Sold And Funds Related To The Sale Constitute Proceeds of Counts 2–4 and 12

22. The Court finds that in January 2013, defendant entered into an agreement with CMZ in which he sold his interest in the CMZ pawn shop business, as well as his purported interest in the Pirate's Choice Rum business. Defendant also assigned the Pirate's Choice trademark, then purportedly owned by CC Distribution, to CMZ, as part of the sale agreement. In exchange for the transfer of defendant's

interest in the CMZ business and the rum business, CMZ agreed to pay defendant approximately $5 million, over time.

23. The Court finds that between January and April 2013, approximately $3 million was paid to defendant by CMZ in a manner he directed. Consistent with his longstanding pattern of putting his funds in accounts in the names of other persons or shell entities, and with his prior efforts to lie to the SEC about the source, location and control over assets dating at least to his May 13, 2011 sworn statement, the Court finds that defendant directed the CMZ principals to transfer funds to others located in various countries. Thereafter, defendant made requests to CMZ to make additional payments to third parties in other countries.

24. The Court finds that in approximately April 2013, defendant then directed that of the approximately $2 million remaining to be paid by CMZ pursuant to the Purchase Agreement, all should be paid to his attorneys at Travers in the Cayman Islands. After Travers deducted nearly $70,000 for its fees, defendant directed that $125,000 be paid to an account in his name, and that Travers simultaneously transfer $1.7 million to a newly formed entity account that he controlled, also at Banco Davivienda in Honduras, in the name of Dinero Shop, SA. At the time that defendant directed the $1.7 million in funds be paid to Dinero Shop, SA, he in fact had two personal accounts open at the same bank, in his own name (one a local currency account and one a USD account). Thus, the Court finds, that defendant chose to have the funds transferred to the newly formed entity accounts rather than to the accounts he held in his own name.

25. The Court finds that prior to making these transfers to Honduras, defendant stated to Zahn in a conversation discussing the upcoming financial transfers, that it was almost impossible for the SEC to serve process in Honduras and that it would be hard for the SEC to garnish assets in Honduras. (Zahn Tr. of 7/22/15, at 18.). The Court credits this testimony. The Court finds that the government introduced other evidence that established that defendant moved his family from the Cayman Islands to Honduras in late January 2013, so quickly that he did not pack up his furniture, pulled his children out of school in the middle of the term, and even left behind the family dog.

26. The Court finds that in a civil forfeiture action filed by the United States in 2013, *United States v. Funds, in the Amount of $1,699,675, etc.*, No. 13–21459–CV–FAM (S.D.Fla.), alleging that defendant engaged in financial transfers of funds to Honduras in an effort to obstruct the official proceeding of the SEC aimed at investigating his alleged securities fraud (and of which defendant now stands convicted in Count 12 of the Indictment in this criminal case), defendant submitted a self-serving affidavit in an effort to get Judge Moreno to release funds that are now part of those sought for forfeiture in the instant motion. (Clark Affidavit, filed 6/19/2013 (D.E.14–1). In that Affidavit, defendant acknowledged that he had informed others that Honduras was not part of the Hague Convention and it would be "difficult for the SEC to enforce a judgment against me while I lived in Honduras," though he claimed that he did not transfer funds to Honduras or relocate to Honduras to try to evade the SEC's jurisdiction. (*Id.* at 6 ¶ 24.) The Court finds the statement of defendant that he did not transfer funds to Honduras as a means to try to evade the SEC's jurisdiction, to not be credible in light of the other evidence to the contrary, defendant's longstanding pattern of behavior and the self-serving statements defendant made during his trial testimony in this case for which the jury clearly found

to be not credible as evidenced by its verdict.

27. Based on the evidence introduced at trial, as well as the exhibits attached to the government's Motion, the Court finds that all of the funds that defendant received from CMZ constitute proceeds of his bank fraud scheme as charged in Counts 2 through 4 of the Indictment. Moreover, the Court finds that once defendant directed that the funds be sent to various people and away from the Cayman Islands/offshore with the purpose of concealing the location, source and control of the funds, those funds became proceeds of his SEC obstruction as alleged in Count 12 of the Indictment.

Based on the foregoing, it is **ORDERED and ADJUDGED** as follows:

1. A forfeiture money judgment for $303,800,000 is entered against defendant, **FRED DAVIS CLARK, JR.** as to each of Counts 2, 3 and 4, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

2. A forfeiture money judgment for $646,757 is entered against defendant, **FRED DAVIS CLARK, JR.** as to Count 5, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

3. A forfeiture money judgment for $565,912 is entered against defendant, **FRED DAVIS CLARK, JR.** as to Count 6, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

4. A forfeiture money judgment for $565,912 is entered against defendant, **FRED DAVIS CLARK, JR.** as to Count 7, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment; and

5. A forfeiture money judgment for $3,300,000 is entered against defendant, **FRED DAVIS CLARK, JR.** as to Count 12, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment.

It is further ORDERED and ADJUDGED that:

6. The following property is hereby forfeited to the United States of America, pursuant to 18 U.S.C. § 982(a)(2) and 28 U.S.C. § 2461, as to Counts 2 through 4, and Count 12, subject to any ancillary

proceedings provided for by Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n):

a. A sum of approximately $1,699,675 transferred on or about April 22, 2013 to a bank account in the name of Dinero Shop, SA at Banco Davivienda ending in x4611, in Roatan, Republic of Honduras which sum has been transferred to and frozen by the Honduras Office of Public Ministry;

b. A sum of approximately $452,519.52 contained in a bank account in the name of Dinero Shop, SA at Banco Davivienda ending in x4611 in Roatan, Republic of Honduras, which sum has been transferred to and frozen by the Honduras Office of Public Ministry;

c. A sum of approximately $125,000 wired by Travers, Thorpe, Alberga, Cayman Island Attorneys at the direction of Fred Davis Clark, Jr. to a Scotia Bank account ending in x8056; and

d. The funds, shares and business interest described by Defendant Fred Davis Clark, Jr., during his deposition in Case No. 13–CIV–10011–King, taken on December 6, 2013 at Parrot Tree Plantation, Roatan Bay Islands, Republic of Honduras more fully-described at pages 15, 17, 18 and 21 of the record of said deposition, generally described as $400,000 to $500,000 in funds issued by CMZ (CMZ Group LTD, a Cayman Islands company described in paragraph 9 of the Second Superseding Indictment in this matter, to include affiliates Cash Wiz Holdings, LTD and Island Elements, CI, LTD) to the benefit of Fred Davis Clark, Jr. and subsequently transferred to or for the benefit of Fred Davis Clark, Jr. to obtain an ownership interest in a tourist medical venture at Parrot Tree Plantation in Roatan, Republic of Honduras.

7. The United States Marshal, or any other duly authorized law enforcement official, shall seize and take custody of the forfeited property pursuant to Fed. R.Crim.P. 32.2 and the procedures set forth in 21 U.S.C. § 853(g), made applicable by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

8. The United States shall publish notice of this Order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6), and to the extent practicable, provide direct written notice to any known potential claimant. The United States shall state in the notice that any person, other than the defendant, having or claiming a legal interest in the property ordered forfeited by this Order, must file a petition with the Court within thirty (30) days of the final publication of the notice or receipt of actual notice, whichever is earlier; that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property; that the petition shall be signed by the petitioner under penalty of perjury, shall set forth the nature and extent of petitioner's right, title and interest in the property, the time and circumstances of the petitioner's acquisition of the right, title or interest in the property, and shall set forth any additional facts supporting the petitioner's claims and the relief sought.

9. Upon adjudication of all third-party interests, if any, this Court will enter a Final Order of Forfeiture, pursuant to Fed. R. Crim. P. 32.2(c) and 21 U.S.C. § 853(n), in which all interests will be addressed. If no claims or petitions are filed within thirty (30) days of the final publication or receipt of actual notice, whichever is earlier, then, pursuant to Fed. R. Crim. P. 32.2(c)(2) and 21 U.S.C. § 853(n)(7), this Order shall be deemed a final order of forfeiture, and the United States Marshal, or any other duly authorized law enforcement official, shall dispose of the property forfeited hereunder according to law.

10. Pursuant to Fed. R. Crim. P. 32.2(b)(4), this Order of forfeiture shall become final as to the defendant upon entry and shall be made a part of the sentence.

11. The United States may at any time move, pursuant to Fed. R. Crim. P. 32.2(e)(1), to amend this Order to include property that is subject to forfeiture that was located and identified after the entry of this Order; or is substitute property that qualifies for forfeiture under an applicable statute, having a value not to exceed the money judgments, in whole or in part.

12. The United States District Court shall retain jurisdiction in this case for the purpose of enforcing this Order.

**DONE and ORDERED,** in Chambers, at Miami, Florida this *27* day of *January,* 2016.

### POST–SENTENCING ORDER OF FORFEITURE AND MONEY JUDGMENT

THIS MATTER came before the Court, at sentencing, with respect to forfeiture matters. The United States moved, *ore terms,* for imposition of the Court's previously-entered forfeiture orders, specifically, ECF 488 and ECF 513. The Court directed that an Order of Forfeiture be supplied. The Court has fully reviewed the United States' Motion for Forfeiture Determinations and exhibits filed at ECF 480, the timely-filed Memorandum of Law Pertaining to Forfeitures filed by Defendant at ECF 495, and the relevant portions of the record. The Court also reviewed its previously-entered Order of Forfeiture and Money Judgment at ECF 488. The Court, having been fully advised in the premises, including that forfeiture is final as to the defendant at sentencing, Fed. R. Crim. P. 32.2(b)(4)(A), it is hereby:

**ORDERED AND ADJUDGED** that the previously-entered Order of Forfeiture and Money Judgment (ECF 488), and all facts and conclusions of law upon which it is based, is **AFFIRMED** and is **FINAL** as to the defendant as of the date of sentencing. Specifically, forfeiture is ordered as follows:

1. A forfeiture money judgment for $303,800,000 is entered against defendant, FRED DAVIS CLARK, JR. as to each of Counts 2, 3 and 4, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

2. A forfeiture money judgment for $646,757 is entered against defendant, FRED DAVIS CLARK, JR. as to Count 5, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

3. A forfeiture money judgment for $565,912 is entered against defendant, FRED DAVIS CLARK, JR. as to Count 6, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

4. A forfeiture money judgment for $565,912 is entered against defendant, FRED DAVIS CLARK, JR. as to Count 7, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

5. A forfeiture money judgment for $3,300,000 is entered against defendant, FRED DAVIS CLARK, JR. as to Count 12, as a sum of money equal in value to the proceeds traceable to the offense, pursuant to Federal Rule of Criminal Procedure 32.2(b). The proceeds obtained from all properties seized and forfeited pursuant to this Order, minus the ordinary and necessary expenses incurred by the United States to protect the interests of the United States or third parties, shall be applied to the defendant's money judgment;

It is further **ORDERED** and **ADJUDGED** that:

6. The following property is hereby forfeited to the United States of America, pursuant to 18 U.S.C. § 982(a)(2) and 28 U.S.C. § 2461(c), as to Counts 2 through 4, and Count 12, since the properties have a nexus to the crimes of conviction, subject to any ancillary proceedings provided for by the Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853(n):

a. A sum of approximately $1,699,675 transferred on or about April 22, 2013 to a bank account in the name of Dinero Shop, SA at Banco Davivienda ending in x4611, in Roatan, Honduras which sum has been transferred to and frozen by the Honduras Office of Public Ministry;

b. A sum of approximately $452,519.52 contained in a bank account in the name of Dinero Shop, SA at Banco Davivienda ending in x4611 in Roatan, Honduras, which sum has been transferred to and frozen by the Honduras Office of Public Ministry;

c. A sum of approximately $125,000 wired by Travers, Thorpe, Alberga, Cayman Island Attorneys at the direction of Fred Davis Clark, Jr. to a Scotia Bank account ending in x8056; and

d. The funds, shares and business interest described by Defendant Fred Davis Clark, Jr., during his deposition in Case No. 13–CIV–10011–King, taken on December 6, 2013 at Parrot Tree Plantation, Roatan Bay Islands, Honduras more fully-described at pages 15, 17, 18 and 21 of the record of said deposition, generally described as $400,000 to $500,000 in funds issued by CMZ (CMZ Group LTD, a Cayman Islands company described in paragraph 9 of the Second Superseding Indictment in this matter, to include affiliates Cash Wiz Holdings, LTD and Island Elements, CI, LTD) to the benefit of Fred Davis Clark, Jr. and subsequently transferred to or for the benefit of Fred Davis Clark, Jr. to obtain an ownership interest in a tourist medical venture at Parrot Tree Plantation in Roatan, Honduras.

7. The Internal Revenue Service, through its agents, the United States Marshal, or any other duly authorized law enforcement official, shall seize or otherwise take custody of the forfeited property pursuant to Fed. R. Crim. P. 32.2 and the procedures set forth in 21 U.S.C. § 853(g), made applicable by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

8. The United States shall publish notice of this Order in accordance with Federal Rule of Criminal Procedure 32.2(b)(6) and to the extent practicable, provide direct written notice to any known potential claimant. The United States shall state in the notice that any person, other than the

defendant, having or claiming a legal interest in the property ordered forfeited by this Order, must file a petition with the Court within thirty (30) days of the final publication of the notice, or receipt of actual notice, whichever is earlier; that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property; that the petition shall be signed by the petitioner under penalty of perjury, shall set forth the nature and extent of petitioner's right, title and interest in the property, the time and circumstances of the petitioner's acquisition of the right, title or interest in the property, and shall set forth any additional facts supporting the petitioner's claims and the relief sought.

9. Upon adjudication of all third-party interests, if any with respect to the identified property, this Court will enter a Final Order of Forfeiture, pursuant to Fed. R. Crim. P. 32.2(c) and 21 U.S.C. § 853(n), in which all interests will be addressed. If no claims are filed within thirty (30) days of the final publication or receipt of actual notice, whichever is earlier, then, pursuant to Fed. R. Crim. P. 32.2(c)(2) and 21 U.S.C. § 853(n)(7), this Order shall be deemed a final order of forfeiture, and the Internal Revenue Service, through its agents, the United States Marshal, or any duly authorized law enforcement official, shall dispose of the property, forfeited hereunder, according to law.

10. The United States is further authorized, pursuant to Title 21, United States Code, Section 853(m) and Rule 32.2(c)(1)(B) of the Federal Rules of Criminal Procedure, to conduct any discovery necessary, including depositions, to identify, locate or dispose of the property ordered forfeited herein or in order to expedite ancillary proceedings related to any third party petitions claims filed with respect to the forfeited property.

11. The United States may at any time move, pursuant to Fed. R. Crim. P. 32.2(e)(1), to amend this Order to include property that is subject to forfeiture that was located and identified after the entry of this Order; or is substitute property that qualifies for forfeiture under an applicable statute, having a value not to exceed the money judgments.

12. The United States District Court shall retain jurisdiction in this case for the purpose of enforcing this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this *25* day of February, 2016.